The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TWINCO, INC., | Case No. 3:24-cv-05061-BHS |
| Plaintiff, | |
| v. | |
| THE UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as the United States Secretary of the Treasury; and THE UNITED STATES OF AMERICA, | **APPELLANT'S BRIEF** |
| Defendants. | |

## APPELLANT'S BRIEF

Plaintiff Twinco, Inc. ("Twinco"), by and through its attorneys, Gordon Thomas Honeywell LLP, respectfully submits its Appellant's Brief pursuant the Court's Minute Order dated February 11, 2025. (Dkt. 19).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

## TABLE OF CONTENTS

I.       INTRODUCTION ................................................................................................ 3

II.      SUMMARY OF FACTS ...................................................................................... 4

   A.    SBA Issues Temporary Suspension in 2018 for Conduct from 2015. ........................... 4

   B.    CARES Act Establishes the PPP Loan Program and Delegates Authority to Private
         Lenders to Make Lending Decisions. ........................................................................ 7

   C.    SBA Emergency Rulemaking to Implement the PPP Loan Program. ........................... 9

   D.    Twinco PPP Loan Application and Approval by Columbia State Bank. ....................... 12

   E.    Columbia State Bank Approves Loan Forgiveness, but the SBA Intervenes. ............... 12

   F.    The SBA Denies Loan Forgiveness for the First Time. ............................................. 13

   G.    The SBA Denies Loan Forgiveness a Second Time. ................................................ 14

III.     ARGUMENT ..................................................................................................... 15

   A.    Standard of Review ............................................................................................... 15

   B.    The Three Year Rule Is Invalid Because it Was Not Properly Adopted. ...................... 16

   C.    The SBA Does Not Have Authority to Render Applicants Ineligible for PPP Loans
         Based on the Three Year Rule Because it is Contrary to Existing Law ....................... 17

   D.    The SBA's Implied Adoption of the Three Year Rule is Arbitrary and Capricious. ....... 19

   E.    The SBA's Application of the Three Year Rule is Arbitrary and Capricious ................ 21

IV.      CONCLUSION ................................................................................................... 23

1

## I.    <u>INTRODUCTION</u>

2      This is an appeal of a Final Decision (the "Decision") of the Office of Hearings and Appeals

3   ("OHA"). (Dkt. 9, SBA_000458–66).  The Decision partially upheld the SBA's denial of PPP loan

4   forgiveness to Twinco on the basis of what has been referred to as the SBA's "Three Year Rule."

5   Twinco seeks judicial review to challenge the validity of Three Year Rule and to obtain the loan

6   forgiveness it is entitled to.

7      On March 25, 2020, during the early days of the Covid-19 pandemic, Congress enacted the

8   Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to protect small businesses

9   and their employees from the dire economic harm being caused by the pandemic and resulting

10   public health orders.  *See* Pub. L. No. 116-136, 134 Stat. 281 (2020).  The CARES Act created the

11   Paycheck Protection Program ("PPP"), which provided the SBA with the funding and authority to

12   operate a loan program designed to financially assist small businesses with their cash-flow during

13   the pandemic.  *Id.*, § 1102.  The CARES Act broadened eligibility for SBA loans (15 U.S.C. §

14   636(a)(36)(D)), and most significantly, provided for the forgiveness of PPP loans if the funds were

15   used in a manner to support ongoing payroll for employees during the pandemic. (15 U.S.C. §

16   636m).  The CARES Act also delegated authority to make loan approval and forgives decisions to

17   private lenders.  *See* 15 U.S.C. § 636(a)(36)(F)(ii)(I); 15 U.S.C. § 636m(g).

18      Twinco is a Washington corporation that operates several Wendy's franchise locations in

19   Washington State, and like all restaurants, was severely impacted by the pandemic and associated

20   stay at home orders issued by local government. Twinco applied for a PPP loan, which was

21   approved. Twinco used the funds for approved purposes, and then applied for loan forgiveness,

22   which was also approved by its lender.  However, the SBA intervened and has repeatedly denied

23   loan forgiveness, with shifting excuses for denial that are all associated with a prior temporary

24

APPELLANT'S BRIEF
[3:24-cv-05061-BHS] - 3

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

suspension by the SBA of Twinco's loan eligibility under the government-wide system of suspension and debarment.

Suspension and debarment is used by federal agencies to exclude individuals who are not presently responsible from participating in transactions with the government, and requires strict adherence to procedures to ensure individuals are given due process before being excluded. Twinco was temporarily suspended during legal proceedings in 2018, but the SBA elected not to pursue an extension of the suspension or pursue formal debarment. Twinco was not presently suspended or debarred when it applied for its PPP loan.

The Decision upheld the SBA's denial of forgiveness on the basis of what the SBA refers to as an "implicitly adopted" rule that excludes applicants from participating in the PPP loan program if they were suspended during the prior three years—effectively extending the exclusionary period of suspension and debarment without adhering to required due process procedures. This Court should invalidate the Three Year Rule, hold the Decision unlawful and set it aside, and compel the SBA to approve full loan forgiveness to Twinco. 5 U.S.C. § 706.

## II.    SUMMARY OF FACTS

### A.  SBA Issues Temporary Suspension in 2018 for Conduct from 2015.[1]

In 2015, Sangha Top Hat, LLC, owned in part by Jasmel Sangha, obtained an SBA 7(a) loan for the acquisition of a building that was leased to other businesses. Twinco was the primary tenant and leased a majority of the building with plans to use the facility to support the operations of planned Wendy's franchise locations in Sea-Tac International Airport.

---

[1]    Note that the SBA previously acknowledged the accuracy of Twinco's recounting of facts related to the suspension. (Dkt. 9, SBA_000434; SBA_000460).

APPELLANT'S BRIEF
[3:24-cv-05061-BHS] - 4

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

1    Separate from Twinco's unit in the building, Sangha Top Hat leased the upper unit to Jus

2    Liquor, LLC dba Nimbin Farm, a company unrelated to Twinco's franchise operations business.

3    Nimbin Farm held a retail marijuana license issued by the State of Washington and opened a

4    marijuana retail store in the building.  While Nimbin Farm's business was legal in the State of

5    Washington, it was not a use the SBA allowed in buildings funded by SBA 7(a) loans.

6    Bank of the West was the lender for the SBA 7(a) loan to Sangha Top Hat.  Upon learning

7    that the property was partially leased to Nimbin Farm, Bank of the West declared the loan to be in

8    default and accelerated the full amount due.  Sangha Top Hat promptly sought and secured

9    refinancing from an alternative source to repay the loan.  Not only did Sangha Top Hat repay the

10   loan in full, but it also paid all attorney fees associated with the default and a prepayment penalty

11   of $33,796.03.  The lender and the SBA were fully compensated and suffered no loss.

12   While the SBA suffered no loss, the SBA pursued criminal charges against Jasmel Sangha

13   associated with his decision to lease a portion of the SBA funded building to a licensed cannabis

14   business.  The criminal charges were brought after Keven Standley, Special Agent for the SBA

15   and Office of Inspector General, prepared a Certification for Determination of Probable Cause.

16   Thereafter, the SBA issued a Notice of Suspension to Jasmel Sangha on February 16, 2018.  (Dkt.

17   9, SBA_00048–52).  The Notice of Suspension explained that Jasmel Sangha was suspended "from

18   future procurement and nonprocurement transactions with any agency . . . under the provisions of

19   2 C.F.R. Parts 180 and 2700."  (Dkt 9, SBA_000048).  It was based specifically on the criminal

20   charges that Jasmel Sangha was facing and concluded that "you may be a heightened risk if you

21   continue receiving financial assistance for business involving a government-backed loan *while the*

22   *criminal case is pending*."  (Dkt 9, SBA_000051) (emphasis added).  Further, the Notice of

23   Suspension made clear that the suspension was "a temporary measure imposed pending the

24

APPELLANT'S BRIEF
[3:24-cv-05061-BHS] - 5

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

1   completion of any investigation or legal proceedings that may ensue." (Dkt 9, SBA_000051). The

2   Notice of Suspension, and the stated temporary nature of the suspension, is consistent with

3   government-wide procedures for suspension and debarment.

4       By Executive Order 12549, President Ronald Reagan required all executive departments

5   and agencies to "participate in a system for debarment and suspension from programs and activities

6   involving Federal financial and nonfinancial assistance and benefits," including for "loans, and

7   loan guarantees."  Exec. Order No. 12549, at §1, 51 F.R. 6370 (Feb. 18, 1986).  Executive Order

8   12549 directed Executive departments and agencies to "[f]ollow government-wide criteria and

9   government-wide minimum due process procedures when they act to debar or suspend participants

10  in affected programs."  *Id.* at §2(a).  The Director of the Office of Management and Budget

11  ("OMB") was authorized to "prescribe government wide-criteria and government-wide minimum

12  due process procedures" for suspension and debarment. *Id.* at §6.  Each Executive department and

13  agency was directed to "issue regulations governing their implementation of this Order that shall

14  be consistent with the guidelines" adopted by OMB. *Id.* at §3.  The SBA specifically adopted

15  OMB's guidelines as its own regulations for suspension and debarment in 2 C.F.R. § 2700.10, and

16  established additional procedures for due process in 2 C.F.R. § 2700.765 and 2 C.F.R. § 2700.890.

17      Amongst the government-wide criteria and due process procedures, are regulations that

18  relate to the length of any suspension or debarment and the procedures that must be followed in

19  order to extend a suspension or debar an individual or business.  2 C.F.R. § 180.760 (with emphasis

20  added) states:

21      **§ 180.760 How long may my suspension last?**

22      (a) If legal or debarment proceedings are initiated at the time of, or during your
        suspension, the *suspension may continue until the conclusion of those proceedings*.
23      However, *if proceedings are not initiated, a suspension may not exceed 12 months.*

24

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

(b) The suspending official *may extend the 12 month limit* under paragraph (a) of this section for an additional 6 months if an office of a U.S. Assistant Attorney General, U.S. Attorney, or other responsible prosecuting official requests an extension in writing. *In no event may a suspension exceed 18 months without initiating proceedings under paragraph (a) of this section.*

(c) The suspending official must notify the appropriate officials under paragraph (b) of this section of an impending termination of a suspension at least 30 days before the 12 month period expires to allow the officials an opportunity to request an extension.

The only legal proceedings ever initiated related to Jasmel Sangha's suspension were the criminal charges the Notice of Suspension relied upon. Those proceedings concluded when he pled guilty to a misdemeanor and the corresponding Judgment and Sentence was entered on June 22, 2018. (Dkt 9, SBA_000054–56). Pursuant to 2 C.F.R. § 180.760(a), the SBA's temporary suspension would terminate upon entry of the Judgment and Sentence, unless the SBA initiated debarment proceedings during the suspension. As noted on the face of the Judgment and Sentence, multiple special agents from the SBA and Office of Inspector General were present at sentencing, and were clearly aware of the conclusion of the legal proceedings. (Dkt 9, SBA_000054). The SBA elected not to pursue debarment proceedings against Jasmel Sangha, which would have required more stringent due process procedures consistent with 2 C.F.R. §§ 180–885. For example, "[u]nlike a suspension, a debarment is not effective until the debarring official issues a decision. The debarring official does not issue a decision until the respondent has had an opportunity to contest the proposed debarment." 2 C.F.R. § 180.810.

## B. CARES Act Establishes the PPP Loan Program and Delegates Authority to Private Lenders to Make Lending Decisions.

The CARES Act became law on March 27, 2020. P.L.116-136, 134 Stat. 281 (March 27, 2020) (relevant portions codified within 15 U.S.C.). Amongst its many provisions, it contained two separate sections creating the PPP loan program. Section 1102 (codified, as amended, at 15

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

U.S.C. § 636(a)(36)) amended Section 7(a) of the Small Business Act to create the PPP loan program and address qualifications for obtaining a PPP loan. Section 1102 broadened the classes of business eligible for SBA loans in order to make PPP loans widely available to businesses. 15 U.S.C. § 636(a)(36)(D). However, the CARES Act gave the SBA the discretion to apply its existing general qualifications for obtaining SBA 7(a) loans to PPP loans. *See* 15 U.S.C. § 636(a)(36)(B) ("the Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection" (i.e. 7(a) loans)). Notably, private lenders were "delegated authority by the Administrator to make and approve covered loans." 15 U.S.C. § 636(a)(36)(F)(ii)(I). Private lenders were responsible for handling applications for PPP loans consistent with Section 7(a) rules, as modified by the CARES Act and further emergency rulemaking.

A separate section of the CARES Act, Section 1106 specifically addressed the circumstances of when a PPP loan may be forgiven and in what amount. The section did not focus on whether a borrower is eligible for a loan, because that analysis would be provided during the original application process governed by the 7(a) loan provisions in 15 U.S.C. § 636(a). Section 1102 has been codified as its own section outside of the code governing 7(a) loans. It was originally codified as 15 U.S.C. § 9005, but is now codified as 15 U.S.C. § 636m.

15 U.S.C. § 636m(b) states that "[a]n eligible recipient shall be eligible for forgiveness of indebtedness on a covered loan in an amount equal to" the calculation of certain cost and payments made by the borrower during the covered period. The section specifies the calculations used to determine whether the borrower is entitled to forgiveness, and if so, in what amount.

The process for obtaining loan forgiveness starts with the borrower making an application for forgiveness to "the lender servicing the covered loan," which includes the submission of

required documentation and specified certifications.  15 U.S.C. § 636m(e).  The lender (not the SBA) "shall issue a decision on the application" within 60 days. 15 U.S.C. § 636m(g).  The SBA is then obligated to remit the amount of forgiveness to the lender within 90 days.  15 U.S.C. § 636m(c)(3).  The CARES Act gave the SBA authority to implement Section 1106 with rulemaking, but did not provide express authorization for the SBA to conduct its own determination of loan forgiveness eligibility separate from the lender's decision.

While the CARES Act provided the SBA with no opportunity to override the judgment delegated to private lenders with respect to the loans provided by those lenders, a later amendment provided a limited ability to do so.  15 U.S.C. § 636m was amended to include a simplified loan forgiveness process for "covered loans up to $150,000."  *See* 15 U.S.C. § 636m(l)(1).  Such applications could be submitted with very limited documentation. 15 U.S.C. § 636m(l)(1)(B). Accordingly, Congress granted the SBA authority to review and audit covered loans of up to $150,000, and granted authority to modify the amount of a covered loan or the amount of forgiveness "in the case of fraud, ineligibility, or other material noncompliance with applicable loan or loan forgiveness requirements." 15 U.S.C. § 636m(l)(1)(E).  However, for applications for forgiveness of "covered loans of more than $150,000," which required substantial documentation to be provided to the lender, Congress chose to omit granting the SBA any audit rights or the ability to modify loan or forgiveness amounts determined by the lender.  *See* 15 U.S.C. § 636(l)(2).

**C.  SBA Emergency Rulemaking to Implement the PPP Loan Program.**

The SBA engaged in emergency rulemaking and issued an Interim Final Rule ("IFR") to implement the PPP on April 2, 2020.  *See* F.R. Vol. 85, No. 73 (April 15, 2020).  The IFR explained the general purpose and process to be followed by PPP loans:

> SBA is authorized to guarantee loans under the PPP through June 30, 2020. Congress authorized a program level of $349,000,000,000 to provide guaranteed

APPELLANT'S BRIEF
[3:24-cv-05061-BHS] - 9

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

loans under this new 7(a) program. The intent of the Act is that SBA provide relief to America's small businesses expeditiously, which is expressed in the Act by giving all lenders delegated authority and streamlining the requirements of the regular 7(a) loan program. For example, for loans made under the PPP, SBA will not require the lenders to comply with section 120.150 "What are SBA's lending criteria?." <u>SBA will allow lenders to rely on certifications of the borrower in order to determine eligibility of the borrower and use of loan proceeds and to rely on specified documents provided by the borrower to determine qualifying loan amount and eligibility for loan forgiveness</u>. Lenders must comply with the applicable lender obligations set forth in this interim final rule, but will be held harmless for borrowers' failure to comply with program criteria; <u>remedies for borrower violations or fraud are separately addressed in this interim final rule</u>. The program requirements of the PPP identified in this rule temporarily supersede any conflicting Loan Program Requirement (as defined in 13 C.F.R. § 120.10).

85 F.R. at 20812, §1. (emphasis added).

The CARES Act delegated authority to private lenders to make loan eligibility and forgiveness determinations, and the SBA's rules reinforced that fact: "All loans will be processed by all lenders under delegated authority and lenders will be permitted to rely on certifications of the borrower in order to determine eligibility of the borrower and the use of the loan proceeds." *Id.* at 20816, §4(A).

Regarding eligibility, the rules specified reduced underwriting standards for PPP loans, but maintained the existing regulations and guidance regarding which businesses would be ineligible for 7(a) loans.  *Id.* at 20812, §2(c) and 20815, §3(B).  Specifically, the IFR stated ineligible businesses are identified in 13 C.F.R. § 120.110 and "in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2." *Id.* at 20812, §2(c).

The SBA specified that applicants must use SBA Form 2483 to apply for a loan.  *Id.* at 20814, §2(q).  Lenders were allowed to rely on borrower certifications in the application in making lending decisions, and "remedies for borrower violations or fraud" were to be "separately addressed" in the SBA's emergency rules.  *Id.* at 20812, §1.  However, no rules specify what actions the SBA may take.

1        SBA Form 2483 consisted of four pages.  The first two pages consisted of the actual form

2 to be completed and submitted by applicants, and the last two pages contained instructions.

3 Applicants had to expressly answer several questions on the first page.  Relevant to this case, the

4 first question asked: "Is the Applicant or any owner of the Applicant *presently* suspended,

5 debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in

6 this transaction by any Federal department or agency, or presently involved in any bankruptcy?"

7 (Dkt. 9, SBA_000229–30) (emphasis added). The form stated that if an Applicant answered "Yes,"

8 the loan would not be approved. (*Id.*) The second page of the form required applicants to make

9 numerous certifications, some of which needed to be initialed.  The bottom of page two was then

10 signed by the applicant.

11        The third and fourth pages have not been included in the record by the SBA.  However, the

12 SBA provided a link to the form in prior briefing.  (Dkt. 9, SBA_000440).  The third and fourth

13 pages had no portion that needed to be completed by applicants, and instead included some

14 application instructions, and a variety of agency disclosures, including required disclosures related

15 to the Paperwork Reduction Act, the Privacy Act, the Debt Collection Act of 1982, and others.

16 The very last paragraph included what is being referred to as the implied Three Year Rule, which

17 is stated below in its entirety with the relevant portion emphasized:

18         **Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part
19         2700) –** By submitting this loan application, you certify that neither the Applicant
        or any owner of the Applicant have *within the past three years been: (a) debarred,
20         suspended, declared ineligible or voluntarily excluded from participation in a
        transaction by any Federal Agency*; (b) formally proposed for debarment, with a
21         final determination still pending; (c) indicted, convicted, or had a civil judgment
        rendered against you for any of the offenses listed in the regulations or (d)
22         delinquent on any amounts owed to the U.S. Government or its instrumentalities as
        of the date of execution of this certification.

23 The form to not required any signature or initials of the applicant following the final paragraph.

24

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

1

**D.  Twinco PPP Loan Application and Approval by Columbia State Bank.**

2

3

4

5

6

7

8

9

10

Like all restaurant businesses, Twinco was significantly affected by the coronavirus pandemic.  Twinco applied for a PPP loan to help make payroll during the pandemic on April 7, 2020, and the administrative record indicates the application consisted of the first two pages of . SBA Form 2483.  (Dkt. 9, SBA_000392–393).  Twinco correctly answered "no" to the first question asking whether it was *presently* suspended or debarred. (*Id*.)  The administrative record also reflects that the SBA is unaware of whether Twinco ever received or read pages 3 and 4 that follow the application in SBA Form 2483.  (Dkt. 9, SBA_000440–41).  The application was reviewed and approved by Columbia Sate Bank in the amount of $332,863.62.  (Dkt. 9, SBA_000243).

11

**E.  Columbia State Bank Approves Loan Forgiveness, but the SBA Intervenes.**

12

13

14

15

16

17

18

Twinco utilized its PPP loan for payroll to keep its workers paid and employed through the pandemic as intended by the CARES Act.  Twinco applied for loan forgiveness with Columbia State Bank and supplied all required documentation to demonstrate the use of the funds to maintain payroll.  Columbia State Bank made a determination to approve loan forgiveness in full on November 23, 2021.  (Dkt. 9, SBA_000243).  However, on February 23, 2022, the SBA notified the lender that it was intervening and conducting its own separate loan review and requested certain information from the lender.  (Dkt. 9, SBA_000390–391).

19

20

21

22

23

The SBA Internal Notes related to the process contain an acknowledgement from the SBA that the "Lender submitted all appropriate documents and supporting information."  (Dkt. 9, SBA_000253).  The SBA's own Loan & Forgiveness Review Procedures indicate that the SBA confirmed Twinco met all loan eligibility requirements, including those stated in 13 C.F.R. § 120.110, except the records contained a "Holde Code" requiring "special handling."  (Dkt. 9,

24

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

1   SBA_000246–248).   The same record confirmed that Twinco's original loan amount was

2   calculated correctly and the proposed forgiveness amount was also correct.  (Dkt. 9, SBA_000248

3   –251).

4          The SBA's Internal Notes reflect that on March 22, 2022, the SBA noted Twinco had "Hold

5   Code 28" for a debarred businesses because "Twinco Inc. is listed on the internal SAM Exclusion

6   List.  They have an activation date of 2/16/2018 added by the SBA and an indefinite termination

7   date." (Dkt. 9, SBA_000253). Aside from identifying Twinco's prior suspension, the

8   administrative record contains no other identifiable basis for challenging Twinco's eligibility.

9      **F.  The SBA Denies Loan Forgiveness for the First Time.**

10          The SBA first denied Twinco loan forgiveness on March 24, 2022 (the "Original Denial").

11  The SBA denied loan forgiveness because an owner of Twinco allegedly "defaulted in the last 7

12  years and caused a loss to the government." (Dkt. 9, SBA_000256). The Original Denial made no

13  mention of any suspension.

14          Twinco appealed on the basis that the Original Denial was clearly erroneous.  Twinco

15  pointed out—as noted above—that while Sangha Top Hat (not an owner of Twinco) previously

16  defaulted on a loan, there was no loss to the government because Sangha Top Hat repaid the loan

17  in full, including a prepayment penalty and attorney fees. However, the SBA's counsel shifted

18  attention away from the alleged default resulting in government loss, and began claiming that

19  Twinco was ineligible because Jasmel Sangha had been indefinitely suspended by the SBA.  (Dkt.

20  9, SBA_000061–62).

21          After learning of the suspension during the original appeal, counsel for Twinco worked

22  with counsel for the SBA to clear up the SBA's apparent confusion about the alleged "indefinite"

23  suspension.  On July 19, 2022, the SBA issued a letter acknowledging that the suspension had

24

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

1    been terminated.  (Dkt. 9, SBA_000071–72).  However, rather than acknowledge that it terminated

2    upon the conclusion of the criminal investigation and proceedings consistent with 2 C.F.R. §

3    180.760(a), the letter stated that the termination of the suspension "takes effect on the date of this

4    notification."  (Dkt. 9, SBA_000072).  The SBA then withdrew its Original Denial and filed a

5    motion to dismiss the appeal, which was granted.  (Dkt. 9, SBA_000025).

6    **G. The SBA Denies Loan Forgiveness a Second Time.**

7         Twinco anticipated loan forgiveness would be granted following dismissal of the initial

8    appeal.  However, on October 21, 2022, the SBA issued a new decision, once again denying loan

9    forgiveness (the "Second Denial").  (Dkt. 9, SBA_000091–93).  This time the SBA's decision

10   made no mention of default or government loss.  Instead, it claimed that Twinco was ineligible

11   because Jasmel Sangha was "suspended within 3 years of the application date of April 7, 2020,"

12   and because "the suspension was in place at the time of application." (*Id*.).  The Second Denial

13   was received by Twinco on November 9, 2022, and Twinco timely appealed the matter to the SBA

14   Office of Hearings and Appeals ("OHA").

15        During the appeal, the SBA focused on two arguments regarding Twinco's alleged

16   ineligibility.  First, that Twinco was ineligible because it was still suspended in the eyes of the

17   SBA at the time of the application, even though the criminal proceedings that were the basis of the

18   temporary suspension concluded in 2018.  Second, that Twinco violated the "SBA's Three Year

19   Rule for Suspensions." (Dkt. 9, SBA 000442).  The SBA claimed the Three Year Rule meant that

20   applicants who had been previously suspended during the prior three years, would continue to be

21   prohibited from obtaining PPP loans for a period of three years after the conclusion of their

22   suspension or debarment. (Dkt. 9, SBA_000440–42).  This rule cannot be found in any federal

23   statute or regulation.  Instead, the SBA claims that it was "implicitly adopted" when the SBA

24

APPELLANT'S BRIEF
[3:24-cv-05061-BHS] - 14

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

1  included a paragraph in the instructions following the application in SBA Form 2483 that included

2  a statement that applicants certify that they have not been suspended in the prior three years.  (Dkt.

3  9, SBA_000440–42).

4        On January 24, 2023, the Administrative Judge issued an Initial Decision that became final,

5  and which is the subject of this appeal (the "Decision").  (Dkt. 9, SBA_000458–66).  The

6  Administrative Judge correctly concluded that Twinco's prior suspension terminated by operation

7  of law when the Judgment and Sentence was entered against Jasmel Sangha in June 2018, or no

8  later than 12 months after the Notice of Suspension was issued in February 2018, when the SBA

9  took no action to  seek debarment or extend the suspension under 2 C.F.R. § 180.760(b). (Dkt. 9,

10  SBA_000464–65).  However, with respect to the "implicitly adopted" Three Year Rule extending

11  the effects of a prior suspension or debarment, the Administrative Judge concluded that he did not

12  have authority to "invalidate a regulation or interpretation issued by the SBA administrator," and

13  therefore had to uphold the SBA's assertion that a rule prohibited applicants from obtaining a PPP

14  loan if they were previously suspended in the three years prior to filing an application.  (Dkt. 9,

15  SBA_000462, 465).  The Administrative Judge noted that any challenge to the validity of the

16  SBA's implicitly adopted rule would have to be reserved for this Court.  (Dkt. 9, SBA_000462).

17  Twinco seeks judicial review of the Decision and the validity of the Three Year Rule.

### III.    ARGUMENT

#### A.  Standard of Review

20        Twinco seeks judicial review of the Decision, which upheld the denial of loan forgiveness

21  to Twinco based on the SBA's Three Year Rule.  Under the APA, this Court should "hold unlawful

22  and set aside agency action, findings and conclusions found to be: (A) arbitrary, capricious, an

23  abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right,

24

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). The District Court for the District of Columbia recently provided a useful summary of the applicable law to be considered when conducting judicial review of an SBA loan decision:

> Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, ... or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The court itself must "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." § 706; *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 393 (2024) ("The text of the APA means what it says."). A court tasked with deciding "whether an agency's interpretation of its governing statute is contrary to law" thus "must exercise [its] 'independent judgment' and 'apply[ ] all relevant interpretive tools' to reach 'the best reading of a statute.' " *Env't Def. Fund. v. EPA*, 124 F.4th 1, 11 (D.C. Cir. 2024) (*quoting Loper Bright*, 603 U.S. at 394–95, 400). And a court tasked with deciding whether an agency action is arbitrary and capricious asks whether the agency's action was "reasonable and reasonably explained," id., "consider[ing] whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment*," MCI Worldcom Network Servs., Inc. v. FCC*, 274 F.3d 542, 547 (D.C. Cir. 2001) (*quoting Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). In so doing, a court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

*35 State St. Hotel Partners, LLC v. Loeffler*, No. CV 24-747 (JDB), 2025 WL 870535, at *6 (D.D.C. Mar. 20, 2025). Additionally, judicial review is limited to the administrative record before the decision-maker at the time of its decision. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

## B. The Three Year Rule Is Invalid Because it Was Not Properly Adopted.

Agency rules are invalid if the agency fails to comply with APA requirements. *Buschmann v. Schweiker,* 676 F.2d 352, 355–56 (9th Cir.1982); *cf. Chrysler Corp. v. Brown,* 441 U.S. 281, 313, 99 S.Ct. 1705, 1723, 60 L.Ed.2d 208 (1979) ("[c]ertainly regulations subject to the APA cannot be afforded the 'force and effect of law' if not promulgated pursuant to the statutory

procedural minimum found in that Act"). At a minimum, the SBA must adopt rules impacting the rights of loan applicants through notice and comment rulemaking. *See* 5 U.S.C. § 553. Adopted agency rules can then be found in the Code of Federal Regulations. The SBA has cited no portion of the C.F.R. that provides the alleged three year suspension rule—because there is none. The SBA never adopted a rule that disqualifies applicants who have been previously suspended or debarred. As a result, the alleged Three Year Rule is void. *See Buschmann,* 676 F.2d at 355–56.

This Court should hold that the SBA's process of "implicitly" adopting a rule in this manner is unlawful and void. 5 U.S.C. § 706(2)(A), (C), and (D).

### C. The SBA Does Not Have Authority to Render Applicants Ineligible for PPP Loans Based on the Three Year Rule Because it is Contrary to Existing Law.

Suspension and debarment by the SBA to disqualify a business from SBA loan eligibility requires adherence to specifically adopted due process procedures that give the applicant the ability to challenge the exclusion decision. However, in this case, the SBA instead states there was an implied Three Year Rule excluding applicants from PPP loan eligibility for a prior suspension that had been terminated, even without the SBA following required debarment procedures. The SBA does not have authority to implement the implied rule because it directly conflicts with controlling law and required due process protections.

It has long been understood that suspension and debarment, "colloquially called 'blacklisting,'" can result in "grave economic consequences." *Gonzalez v. Freeman*, 334 F.2d 570, 574 (D.C Cir. 1964). "Considerations of basic fairness require administrative regulations establishing standards for debarment and procedures which will include notice of specific charges, opportunity to present evidence and to cross-examine adverse witnesses, all culminating in administrative findings and conclusions based upon the record so made." *Id.* at 578. Courts also have a long history of recognizing that taking action to make a business ineligible for government

1    contracts without due process is unlawful "de facto debarment." *See Old Dominion Dairy Prods.,*

2    *Inc. v. Sec'y of Def.,* 631 F.2d 953, 961 n.17 (D.C. Cir. 1980); *Phillips v. Mabus*, 894 F. Supp. 2d

3    71, 81 (D.D.C. 2012).  It is with these principles in mind that federal agencies were ordered to

4    utilize government-wide due process standards for implementing suspension and debarment.

5         Specifically, Executive Order 12549 (1986), Sec. 2, requires that all Executive agencies,

6    including the SBA, "[f]ollow government-wide criteria and government-wide minimum due

7    process procedures when they act to debar or suspend participants in affected programs."  Exec.

8    Order No. 12549, at §2(a), 51 F.R. 6370 (Feb. 18, 1986).  OMB's government-wide debarment

9    and suspension guidelines are contained within 2 C.F.R. § 180, which the SBA specifically

10   adopted as its own in 2 C.F.R. § 2700.10.

11        The regulations that the SBA must adhere to include treating suspensions as a temporary

12   exclusion that only exists during legal proceedings or debarment proceedings.  2 C.F.R. § 180.760.

13   Additionally, debarment may not be effective unless and until a debarment official makes a

14   decision following notice and a hearing.  2 C.F.R. § 180.810.  Any period of debarment is also

15   strictly limited by the debarment official's decision, which will take into consideration mitigating

16   circumstances and the length of a preceding suspension.  2 C.F.R. § 180.865.  "Generally,

17   debarment should not exceed three years." *Id.*  Finally, the SBA has its own additional due process

18   procedures for suspension and debarment that must be followed in addition to the government-

19   wide procedures.  *See* 2 C.F.R. § 2700.765 and 2 C.F.R. § 2700.890.

20        The SBA's Three Year Rule is in direct conflict with its obligations to utilize the

21   government-wide due process procedures for suspension and debarment.  The SBA's Three Year

22   Rule effectively means that following a temporary suspension, an applicant will continue to be

23   excluded from loan eligibility for an additional three years (the general maximum length of

24

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

debarment) without conducting debarment proceedings. Doing so extends the exclusionary effect of a temporary suspension, without giving the suspended party the opportunity to present mitigating circumstances and challenge the length of the exclusion, and without the agency giving any consideration to the specific circumstances of the case as would occur during formal debarment proceedings. The SBA has never been granted authority to depart from the government-wide standards imposed by Executive Order 12549, and its actions to exclude applicants without adhering to the required standards is nothing short of illegal de facto debarment.

This Court must conclude the Three Year Rule is unlawful and cannot be used as a basis to deny loan forgiveness to Twinco because the rule is "not in accordance with law" and is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A) and (C).

### D. The SBA's Implied Adoption of the Three Year Rule is Arbitrary and Capricious.

"Agencies 'are required to engage in reasoned decision making.'" *Huawei Tech. USA, Inc. v. Fed. Commc'n Comm'n*, 2 F.4th 421, 433 (5th Cir. 2021) (*quoting Michigan v. E.P.A.*, 576 U.S. 743, 750 (2015)). "'Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational. *Id.* at 433–34 *(quoting Michigan*, 576 U.S. at 750). The agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. at 434. Further, while "judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action,'" the agency, too, "must defend its actions based on the reasons it gave when it acted," id. at 24. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20, 24 (2020) (*quoting Michigan*, 576 U.S. at 758).

1     Rules are supposed to be well reasoned and clearly articulated. However, the SBA has

2  never offered any reason as to why it adopted the Three Year Rule for PPP loans, yet does not

3  appear to have adopted the same rule for any of its other loan programs.  Further, the fact that the

4  Three Year Rule cannot be found in federal regulations, and can only be found buried in a form

5  that does not clearly articulate its intent to limit eligibility for loans, is clear indicia that it was

6  adopted without any reasoned decision making.

7     The Three Year Rule is also arbitrary and capricious because it renders SBA Form 2483

8  internally inconsistent and renders Question No. 1 superfluous.  Question No. 1 on the form clearly

9  indicates that applicants who are *presently* suspended are not eligible for a loan.  However, that

10  question becomes meaningless if the Three Year Rule is given effect because, according to the

11  SBA, it renders anyone who was previously suspended in the prior three years ineligible,

12  regardless of whether they are presently suspended.  This type of interpretation is inconsistent with

13  the principle that Courts should read statutes "so that effect is given to all its provisions, so that no

14  part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S.

15  303, 314 (2009).  This inconsistency further highlights that the Three Year Rule is not the result

16  of reasoned decision making.

17     The unreasoned adoption of the rule is also highlighted by the fact that it purports to be

18  based on a certification that applicants make by submitting the application.  However, the

19  application itself is filled with actual certifications, and each requires the applicant to affirmatively

20  answer or acknowledge each certification.  It is illogical to have applicants complete such written

21  certifications in an application, but then bury an additional significant certification in form

22  instructions outside the actual application.

23

24

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

1    The Three Year Rule was not adopted through reasoned decision making.  This Court

2  should conclude that is arbitrary and capricious.  5 U.S.C. § 706(2)(A).

3    **E.  The SBA's Application of the Three Year Rule is Arbitrary and Capricious.**

4    Even if the adoption of the Three Year Rule was valid, the application of the rule under the

5  circumstances of this case was arbitrary and capricious.  The SBA did not utilize the Three Year

6  Rule to declare Twinco ineligible when it originally applied for a PPP loan, or at any point in time

7  while it was utilizing the loan funds to support the continued employment of its employees.

8  Instead, the SBA first considered the application of the Three Year Rule after Twinco had already

9  applied for forgiveness, and after Columbia State Bank decided Twinco was eligible for

10  forgiveness in full.  At that point in time there was no logical reason to deny forgiveness on the

11  basis of a prior suspension or debarment.

12    The purpose of suspension and debarment is protect the public interest by ensuring the

13  government is not entering into transactions with persons who are not presently responsible.  2

14  C.F.R. § 180.125.  While there may be merit in denying a loan to a person who is presently (and

15  properly) suspended or debarred because of perceived risk that they may misuse or fail to repay

16  the funds, that merit evaporates after the person has already received the loan and utilized the

17  funds.  Once the loan is issued and used, whatever risks the SBA seeks to avoid with suspension

18  and debarment can no longer be prevented.  At that point, the risk posed by borrower would have

19  already been realized, or in Twinco's case, the risk would have been proven unfounded.

20    In this case, Columbia State Bank determined that Twinco properly utilized the loan funds

21  for payroll, which was also confirmed by the SBA's own review records.  (Dkt. 9, SBA_000243,

22  248–51).  Once that conclusion was made, Twinco essentially demonstrated that it was a

23  responsible party, undermining the purpose of any suspension or debarment.  Perhaps more

24

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

1   importantly, at the time the SBA considered the request for loan forgiveness, any risk that Twinco

2   may not repay the loan became meaningless because a decision to forgive the debt eliminates any

3   need for repayment.

4         The SBA has offered no logical reason for why it would apply the Three Year Rule at the

5   point a borrower is seeking forgiveness, rather than at the outset to prevent the loan from being

6   issued, and indeed there is no logical reason. "An exclusion is a serious action that a Federal agency

7   may take only to protect the public interest.  A Federal agency may not exclude a person or

8   commodity for the purposes of punishment." 2 C.F.R. § 180.125(c).  Denying forgiveness on the

9   basis of a prior suspension or debarment does nothing to protect the public interest after the loan

10  funds have already been spent, and serves no purpose other than to cause the borrower to suffer

11  punishing consequences.

12        The SBA's application of the Three Year Rule in this case is arbitrary and capricious for

13  an additional reason.  The CARES Act expressly separated the standards for loan eligibility and

14  forgiveness eligibility, and the CARES Act provides no basis to utilize loan eligibility standards

15  to deny forgiveness. When reviewing an application for a PPP loan, a lender reviews the

16  qualifications for an applicant to receive the loan.  However, when reviewing an application for

17  loan forgiveness after the loan had been previously approved and disbursed, the focus shifts to

18  whether the funds were used in a manner consistent with the purpose of PPP loan program.  *See*

19  15 U.S.C. § 636m(b).  Notably, use of the term "eligible recipient" changes.  During the initial

20  loan application process, "'eligible recipient' means an individual or entity that is eligible to

21  receive a covered loan."  15 U.S.C. § 636(a)(36)(A)(iv).  However, when the analysis shifts to

22  determining whether to approve or deny loan forgiveness, "'eligible recipient' means the recipient

23  of a covered loan." 15 U.S.C. § 636m(a)(10).  After Twinco obtained a PPP loan, and applied for

24

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

1  forgiveness, Twinco became an "eligible recipient" for the purposes of forgiveness, and "[a]n

2  eligible recipient <u>shall</u> be eligible for forgiveness" if certain calculations are satisfied.  15 U.S.C.

3  § 636m(b).  Twinco's lender approved forgiveness, and the SBA has provided no logical reason

4  why it intervened in the forgiveness decision to apply loan eligibility standards, like the Three

5  Year Rule, to deny forgiveness.

6         This Court must conclude the SBA's Decision is unlawful, and set it aside, because the

7  application of the Three Year Rule to deny forgiveness in this case is arbitrary and capricious.  5

8  U.S.C. § 706(2)(A).

9                          **IV.    <u>CONCLUSION</u>**

10        Twinco was previously suspended in 2018, but the SBA did not pursue a further extension

11  of the suspension or pursue debarment, both of which require the SBA to adhere to specific due

12  process procedures.  Twinco properly applied for and used a PPP loan.  It met all requirements to

13  obtain full loan forgiveness.  The only reason Twinco has been denied, according to the Decision

14  on appeal, is that the SBA implicitly adopted a rule that extended the exclusionary effects of

15  Twinco's prior suspension without adhering to any of the due process procedures the SBA is

16  required to follow.

17        This Court should invalidate the Three Year Rule, hold the Decision unlawful and set it

18  aside, and compel the SBA to approve full loan forgiveness to Twinco.  5 U.S.C. § 706.

19

20

21

22

23

24

APPELLANT'S BRIEF
[3:24-cv-05061-BHS] - 23

**GORDON THOMAS HONEYWELL LLP**
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402

1    DATED this 20th day of January, 2025.

2                                     GORDON THOMAS HONEYWELL LLP

3
                                       _/s/Ryan Espegard_____
4                                      RYAN C. ESPEGARD, WSBA No. 41805
                                       1201 Pacific Avenue, Suite 2100
5                                      Tacoma, WA 98402
                                       Telephone No. (206) 676-7548
6                                      Email: respegard@gth-law.com
                                       Attorney for Plaintiff
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24