1

The Honorable Benjamin H. Settle

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

TWINCO, INC.,

Case No. 3:24-cv-05061-BHS

10

Plaintiff,

11

v.

**DEFENDANTS' RESPONSIVE BRIEF
AND MOTION FOR SUMMARY
JUDGMENT**

12

THE UNITED STATES SMALL BUSINESS
ADMINISTRATION; KELLY LOEFFLER,[1],
in her official capacity as Administrator of the
Small Business Administration; SCOTT
BESSENT,[2] in his official capacity as the
United States Secretary of the Treasury; and
THE UNITED STATES OF AMERICA,

13

14

Noted for Consideration:
September 2, 2025

15

16

Defendants.

17

18

## I.    Introduction

19

Plaintiff does not dispute – and cannot dispute – that a certification made in its Paycheck

20

Protection Program ("PPP") loan application was false. This certification stated, in pertinent part,

21

that "neither the Applicant or any owner of the Applicant have within the past three years been"

22

23

[1] Kelly Loeffler became Administrator of the Small Business Administration on February 20, 2025, and is automatically substituted for Isabella Casillas Guzman pursuant to Fed. R. Civ. P. 25(d).

24

[2] Scott Bessent became Secretary of the United States Treasury on January 28, 2025, and is automatically substituted for Janet Yellen pursuant to Fed. R. Civ. P. 25(d).

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 1

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  suspended or debarred. Plaintiff had indeed been suspended within three years of the date of its

2  application, and yet by submitting its application to the lender, it certified it had not been.

3      Now Plaintiff challenges this certification. But as will be shown, this certification is rooted

4  in a pre-existing Section 7(a) loan certification. Congress gave the U.S. Small Business

5  Administration ("SBA") discretion to adjust it by turning it into a bright line exclusion in the

6  context of the emergency nature of the PPP program. It was one of several similar requirements

7  adapted in a similar manner for the exact same reasons. This certification was applied to Plaintiff

8  the same way it would be to any other PPP borrower who violated it. SBA's decision to deny PPP

9  loan forgiveness to Plaintiff should be sustained.

10              **II.    Facts**

11      When the State of Washington legalized the sale of marijuana, Twinco's principal, Jasmel

12  Sangha, decided he wanted to get into the marijuana business. *Notice of Suspension,* Certified

13  Administrative Record ("CAR") at SBA_000048-52 (Dkt. 9). He sought an SBA Section 7(a) loan

14  so that he could purchase the property necessary to do so, even though "[b]usinesses engaged in

15  any activity that is illegal under Federal, State, or local law" are ineligible for such loans. 13 C.F.R.

16  § 120.110(h); *see also* CAR SBA_000048-52. He told Bank of the West (the "7(a) Lender") that

17  he intended to use the property for purposes associated with his Wendy's restaurant franchises. *See*

18  Declaration of Kristin Johnson (Johnson Decl.), Ex. A[3] (*Certification of Determination of*

19

20  [3]Although the Certification for Determination of Probable Cause is not in the CAR, it was incorporated by reference along with the Information (Johnson Decl., Ex. B) into the Notice of Suspension, which is in the record, and which

21  heavily quotes from it. Notice of Suspension, CAR SBA_000048-51. Moreover, in the Non-Felony Plea Agreement and State's Recommendation (Johnson Decl., Ex. D), "[t]he parties . . . stipulated that the facts set forth in the certification(s) for determination of probable cause and prosecutor's summary are real and material facts for purposes

22  of this sentencing." Jasmel signed that agreement when he agreed to plead guilty. *Id.* Therefore he is estopped to deny the accuracy of everything contained in the Certification for Determination of Probable Cause. *See, e.g., United States*

23  *v. Bejar-Matrecios,* 618 F.2d 81, 84 (9th Cir. 1980) ("Because a knowing and voluntary guilty plea constitutes an admission of all the material facts alleged in the indictment . . . it is fair to estop a defendant from relitigating a common material fact even at a subsequent criminal proceeding"). Further, courts "may take judicial notice of

24  undisputed matters of public record, including documents on file in federal or state courts. *Harris v. Cnty. of Orange,* 682 F.3d 1126, 1131-32 (9th Cir. 2012).

DEFENDANTS' RESPONSIVE BRIEF AND                    **UNITED STATES ATTORNEY**
MOTION FOR SUMMARY JUDGMENT                         700 Stewart Street, Suite 5220
[3:24-cv-05061-BHS] - 2                             Seattle, Washington 98101-1271
                                                    206-553-7970

*Probable Cause* ("*CDPC*")) at p. 4. Before the loan even disbursed, Jasmel had already signed a lease with his new marijuana shop, leaving no doubt of his intentions regarding the loan. He was caught by the 7(a) lender, and during investigations it turned out that the property was barely, if ever, used for Wendy's franchise purposes, and that the project he claimed he wanted to use the property for had stalled out at least a decade prior. *Id.* at pp. 3-5. On December 18, 2017, an Information was issued accusing Jasmel of the Washington State felony of Theft in the First Degree, RCW 9A.56.030(1) and 9A.56.020(a). Johnson Decl., Ex. B (*Information*).

On February 16, 2018, SBA entered a formal suspension against Jasmel, Sangha Top Hat LLC ("STH"), Twinco, Inc., and Jus Liquor, LLC. *Notice of Suspension*, CAR SBA_000048-51. The Notice of Suspension recited the forgoing facts, relying heavily on the CDPC and Information, both of which it incorporated by reference. *Id.* After carefully considering the facts and regulations, the SBA Suspension and Debarment Official found:

> You engaged in a scheme to fraudulently procure an SBA guaranteed loan for which otherwise you would be ineligible. You intentionally withheld required information by Bank of the West and SBA, making it appear as if the loan's disbursement was going to be used for Twinco's franchise business, when in fact it was going to be used for illegal activity under federal law, and contrary to what was established in the loan agreement.

*Id.,* SBA_000050.   The other entities, including Twinco, were suspended along with him on grounds of imputation and affiliation. *Id.*, SBA_000050-51. The SBA Suspension and Debarment Official further stated:

> I find that immediate need exists to suspend you, Sangha Top Hat LLC and your business affiliates.  First, the fact that your alleged efforts to mislead Bank of the West and the SBA in order to obtain a loan $680,000 indicates there may be an inherent risk in doing business with you. Second, the crimes charged include allegations that you submitted false information in order to fraudulently acquire loans from Bank of the West.  Submission of false information to a bank constitutes an inherent risk that justifies immediate action in this matter.  Finally, the crimes charged involve a substantial amount of a government-backed loan, indicating you may be a heightened risk if you continue receiving financial assistance for business

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 3

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1
2
3
4

involving a government-backed loan while the criminal case is pending. I find the above information indicates it is not in the Government's best interest to either do business with you and your affiliates or provide you and your affiliates with business assistance in the form of SBA loans. An immediate cessation of such business through this suspension is necessary to protect the Government's best interests.

5    *Id.*, SBA_000051. The notice gave Jasmel, STH, Twinco, and Jus Liquor 30 days to submit

6    "information and arguments in opposition to the suspension," either in person or in writing, and

7    either individually or through a representative. *Id.*, SBA_000052. Jasmel, STH, Twinco, and Jus

8    Liquor never availed themselves of this opportunity.

9         Jasmel would ultimately enter a plea bargain by which the Information was amended to

10   charge him with Attempted Theft In The Second Degree, RCW 9A.23.020, 9A.56.040(1)(a), and

11   9A.56.020(1). Johnson Decl., Ex. C[4] (*Amended Information*). He pled guilty to this gross

12   misdemeanor. *Judgment and Sentence, Non-Felony,* CAR SBA_000054-56. As part of the Non-

13   Felony Plea Agreement and State's Recommendation, he "stipulated that the facts set forth in the

14   certification(s) for determination of probable cause and prosecutor's summary are real and material

15   facts for purposes of this sentencing." Johnson Decl., Ex. D[5] (*Non-Felony Plea Agreement and*

16   *State's Recommendation*). Pursuant to the plea bargain, on June 22, 2018, he was given a suspended

17   364-day jail sentence, with a requirement to complete 80 hours of community service by June 22,

18   2019, plus total fines of $5,500. *Judgment and Sentence, Non-Felony*, CAR SBA_000054-56; *see*

19   *also* Ex. D. Evidently Jasmel completed his community service obligations on December 24, 2018,

20   having performed 107 hours. *Certification of Completion of Court-Ordered Community Service*,

21   CAR SBA_000067. Previously, he had repaid the loan in full. *CDPC* at p. 5. He did not, at that

22
23
24

[4] See footnote 3 about judicial notice and incorporation by reference, above.

[5] See footnote 3 about judicial notice and estoppel, above.

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 4

time, receive a Satisfaction of Judgment, however. *See Satisfaction of Judgment* (dated July 13, 2022), CAR SBA_000069.

Twinco, Inc., the Plaintiff in this matter, was an integral part of the scheme to obtain the loan and open a marijuana retailer. *Notice of Suspension,* CAR SBA_000049-50; *CDPC* at p. 2. The Notice of Suspension and CDPC explain how this was so. *See generally, Notice of Suspension*, CAR SBA_000048-51; Ex. A (*CDPC*). Twinco was suspended for its role in the scheme. *Notice of Suspension*, CAR SBA_000048-51.

Less than three years later, on April 7, 2020, Twinco applied for a $332,863.62 PPP loan with Columbia State Bank (the "PPP Lender"). *Twinco's SBA Form 2483*, CAR SBA_000058-59. On July 22, 2021, Twinco submitted a Form 3508EZ Loan Forgiveness Application. *SBA Form 3508EZ*, CAR SBA_000231-37. On February 24, 2022, SBA informed borrower via the PPP Lender that it was reviewing the loan. *Notification of Paycheck Protection Program Loan Review,* CAR SBA_000227-28. On March 24, 2022, SBA issued a Paycheck Protection Program Final SBA Loan Review Decision rejecting forgiveness for the PPP loan. *First Paycheck Protection Program Final SBA Loan Review Decision* ("*First FLRD*"), CAR SBA_000045-46. On April 22, 2022, Twinco appealed the denial of forgiveness to the SBA Office of Hearings and Appeals ("OHA"). *Appeal Petition,* CAR SBA_000001-03. On July 13, 2022, Twinco provided SBA with a Satisfaction of Judgment from the King County Superior Court, as well as a Certification of Completion of Court-Ordered Community Service. *Satisfaction of Judgment*, CAR SBA_000069; *Certification of Completion of Court-Ordered Community Service*, CAR SBA_000067. On that basis, on July 19, 2022, SBA issued a Notice of Termination of Suspension. *Notice of Termination of Suspension,* CAR SBA_000071-72. SBA withdrew the First FLRD and moved to dismiss the appeal on August 17, 2022. *Motion to Dismiss the Paycheck Protection Program Appeal,* CAR

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

SBA_000017-23. On August 30, 2022, the appeal before OHA was dismissed. *Order Dismissing Appeal*, CAR SBA_000025. The First FLRD is not at issue in this matter.

On October 21, 2022, SBA issued a new Paycheck Protection Program Final SBA Loan Review Decision denying forgiveness of the loan. *Second Paycheck Protection Program Final SBA Loan Review Decision* ("Second FRLD"), CAR SBA_000037-39. It stated:

> SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:
>
> After review of the documentation provided, the SBA concludes that, the Borrower or any owner of the Borrower, was suspended, debarred, proposed for debarment, declared ineligible, or voluntarily excluded from participation by a Federal department or agency within the past three years.
>
> To be eligible for a PPP loan, by submitting the loan application the Borrower certifies that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this Certification.
>
> Principal Jasmel Sangha with SS# ending in [redacted] a 51% owner of Twinco, Inc. was reported on the SAM.gov due to a notice of suspension issued on February 16, 2018. The Office of Credit Risk Management confirms the suspension was terminated as of July 19, 2022. The borrower is confirmed to be ineligible since they were suspended within 3 years of the application date of April 7, 2020. Additionally, the suspension was in place at the time of the application.

*Id*. On November 18, 2022, Twinco appealed the Second FLRD to OHA. *OHA Opinion* at CAR SBA_000459. After briefing from both sides, OHA issued a decision. *Id.,* SBA_000458-66. OHA agreed with Twinco that the suspension had expired on its own before the loan originated, but it found that Jasmel Sangha and Twinco *had* been suspended within three years of loan origination, and sustained SBA's denial of loan forgiveness on that basis. *Id.* On January 19, 2024, Twinco filed its Complaint for Declaratory and Injunctive Relief in this Court. *Complaint,* Dkt. 1.

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 6

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

### III.     Standard of Review

A motion for summary judgment may be used to seek judicial review of agency administrative decisions within the limitations of the APA. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). Generally, the court should grant a motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *City & Cnty. of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997) (alteration in original) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985)). Thus, the usual standard set forth in Rule 56(c) does not apply. *See San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries Serv.*, 819 F. Supp. 2d 1077, 1083-84 (E.D. Cal. 2011) (citing *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006)); *see also Nw. Motorcycle Assoc.*, 18 F.3d at 1472 (noting that for cases "involv[ing] review of a final agency determination under the [APA], ... resolution of this matter does not require fact finding on behalf of this court"). Nevertheless, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Occidental*, 753 F.2d at 770.

Under the APA, a court may set aside an agency's final action if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is a "highly deferential" standard under which there is a presumption that the agency's action is valid "if a reasonable basis exists for its decision." *Kern Cnty. Farm Bureau v. Allen*, 450 F.3d

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 7

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    1072, 1076 (9th Cir. 2006). A reviewing court may also "hold unlawful and set aside agency action,

2    findings, and conclusions" that are "without observance of procedure required by law," or "in

3    excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C.

4    §§ 706(2)(C), (D). Unlike substantive challenges, "review of an agency's procedural compliance

5    is exacting, yet limited." *Kern Cnty. Farm Bureau*, 450 F.3d at 1076.

6        "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether

7    the agency action is supported by the administrative record and otherwise consistent with the APA

8    standard of review." *Gill v. Dep't of Just.*, 246 F. Supp. 3d 1264, 1268 (N.D. Cal. 2017) (quoting

9    *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007)).

10                              **IV.    Argument**

11       **A.    SBA's denial of Twinco's application for loan forgiveness was reasonable.**

12       Twinco argues that SBA's denial of its application for loan forgiveness was arbitrary and

13   capricious. Dkt. 20, pp. 21-23. "Judicial review under [the arbitrary and capricious] standard is

14   deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC*

15   *v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). The statutory and regulatory background

16   is as follows:

17       The Small Business Act has given SBA authority to provide technical, managerial and

18   financial assistance to America's small businesses; the Supreme Court has characterized SBA as

19   having "extraordinarily broad powers" to pursue these statutory goals. 15 U.S.C. § 631(a); *SBA v.*

20   *McClellan*, 364 U.S. 446, 447 (1960). This includes the authority to issue general purpose loans

21   under Section 7(a) of the Act. 15 U.S.C. § 636(a) ("Section 7(a)"). Congress included amongst the

22   Agency's broad powers the authority to "establish general policies" for the "granting and denial"

23   of financial assistance; to "make such rules and regulations as [it] deems necessary to carry out the

24   authority vested in [it]" and to "take any and all actions … [it] determines . . . are necessary or

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 8

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

desirable in making, servicing, compromising, modifying, liquidating, or otherwise dealing with or realizing on loans." 15 U.S.C. §§ 633(d), 634(b)(6), (7). The Small Business Act further gives SBA the authority to "make such investigations as [SBA] deems necessary to determine whether a recipient of or participant in any assistance under this chapter or any other person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of this chapter, or of any rule or regulation under this chapter, or of any order issued under this chapter." 15 U.S.C. § 634(b)(11).

In response to the Covid-19 crisis, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act of 2020 ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (March 27, 2020). This statute was intended to provide emergency assistance to individuals, families, businesses, and health-care providers coping with the coronavirus pandemic. *See Business Loan Program Temporary Changes; Paycheck Protection Program,* 85 Fed. Reg. 21,811, 20811-12 (Apr. 15, 2020) ("First IFR"). One of the measures in the Act was the creation of the Paycheck Protection Program ("PPP") in Section 1102 of the CARES Act, which was intended to provide relief to small businesses suffering during the pandemic. 15 U.S.C. § 636(a)(36). Specifically, it created a new paragraph (36), engrafted into Section 7(a), which temporarily expanded SBA's lending authority. *Id.* As the Eleventh Circuit put it, "[T]he PPP was not created as a standalone program; instead it was added into the existing § 7(a) program, which subjects it to existing conditions and regulations, as well as existing SBA authority." *In re Gateway Radiology Consultants, P.A.,* 983 F.3d 1239, 1256 (11th Cir. 2020); *see also Pharaohs GC, Inc. v. SBA,* 990 F.3d 217, 227 (2d Cir. 2021) ("Congress enacted the [PPP] on the foundation of SBA's 7(a) loan program"). Subparagraph 636(a)(36)(B) of the statute provided that "[e]xcept as otherwise provided in this paragraph, the SBA *may* guarantee [PPP] loans under the same terms, conditions and processes as [other] loan[s] made under" Section 7(a). (italics added).

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 9

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Given the nature of the crisis confronting the nation, Congress intended that PPP loans be disbursed without delay, almost immediately. *See First IFR* at 20,812. The CARES Act authorized SBA to guarantee an enormous amount in PPP loans (up to $349 billion) in just three months (by June 30, 2020). CARES Act § 1102(b)(1); 15 U.S.C. §§ 636(a)(36)(A)(ii)-(iii), (B). Congress instructed SBA to issue regulations implementing the PPP at "warp speed," *Gateway Radiology*, 983 F.3d at 1262, within just 15 days of the CARES Act's enactment, 15 U.S.C. § 9012. To make that possible, Congress instructed SBA to bypass APA notice-and-comment procedures for rulemaking. 15 U.S.C. § 9012 (citing 5 U.S.C. § 553(b)); *Gateway Radiology*, 983 F.3d at 1262 ("Congress freed the SBA from having to comply with the notice requirement"); *Seville Indus., LLC v. United States SBA*, 2025 U.S. App. LEXIS 17465, at *6 (5th Cir. July 25, 2025) ("Congress gave the SBA emergency rulemaking authority exempted from the usual notice-and-comment requirements of the APA").

Less than one week after the CARES Act's March 27, 2020 enactment, SBA (in consultation with the Department of the Treasury) issued the First PPP IFR, posting the rule on its website the same day the PPP loan application became available, April 2, 2020. *First IFR*, 85 Fed. Reg. 20811; *Tidewater Fin. Co. v. United States SBA,* 2024 U.S. Dist. LEXIS 179854, at *5 (E.D. Va. Aug. 9, 2024). "Given the hurry to get cash in worker's hands during those early days of the pandemic, the IFR ensured applicants were 'informed o[f] how to apply for a loan and the terms of the loan . . . as soon as possible.'" *Seville Indus.,* 2025 U.S. App. LEXIS 17465, at *6. A complete copy of the PPP Borrower Application Form, denominated SBA Form 2483, as it existed upon its April 2, 2020 release, is attached at Ex. E to the Johnson Decl., and may be found on the internet.[6] The PPP launched on April 3, 2020, the day after the First IFR and application form were

---

[6] The version of the application form posted on April 2, 2020, may be found at the following URL: https://home.treasury.gov/system/files/136/PPP-Borrower-Application-Form-Fillable.pdf.

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 10

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

posted to the internet. *See* SBA Release No. 20-30.[7]

Because getting the money out the door was so urgent, the process was highly streamlined. As the Western District of Texas has explained:

> The First PPP IFR also authorized qualified lenders to approve and issue PPP loans, and established a streamlined PPP loan-origination process, in which: (1) the usual Section 7(a) underwriting requirements were waived; (2) borrowers were permitted to self-certify their eligibility on PPP loan applications submitted to lenders; (3) enders were permitted to rely (in good faith) on borrowers' self-certifications, documentation, and calculations; and (4) lenders could obtain the SBA's guarantee for a loan by certifying to the SBA that the borrower had made the necessary certifications and had submitted the needed documentation. Under this process, however, lenders were not required to forward borrowers' applications or supporting documentation to the SBA, but instead maintained these records in their files. As a result, the SBA did not, and could not, make independent PPP borrower-eligibility determinations at the loan-origination stage.
>
> ***
>
> To protect the integrity of the PPP, in June 2020, the SBA announced a system of PPP loan review. As the SBA explained, the Small Business Act authorizes the SBA to conduct audits and investigations, 15 U.S.C. § 634(b)(11), and to take such other actions as may be necessary or desirable, *see id.* § 634(b)(6), (7), to ensure that recipients of Section 7(a) assistance follow program rules and regulations. Under this authority, the SBA determined that it would be appropriate to review PPP loans, in the agency's discretion, when borrowers' loan documentation (or any other information) indicates that borrowers may be ineligible for their loans or for loan forgiveness in the full amount claimed. If during a review SBA determines that the borrower was ineligible for its loan, or for the amount received, then forgiveness will be denied in whole or in part, respectively.

*Salutoceuticals, LLC v. United States SBA*, 750 F. Supp. 3d 764, 769-70 (W.D. Tex. 2024) (citations omitted); *see also Accordius Health at Asheville, LLC v. United States SBA,* 2025 U.S. Dist. LEXIS 101463, at *7 (W.D.N.C. Apr. 8, 2025) ("Because borrowers' applications and supporting documentation were maintained by lenders, not sent to SBA, . . . SBA did not (and as a practical matter could not) make independent PPP borrower-eligibility determinations at the loan

---

[7] This press release may be found at the following URL: https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-small-businesses-affected-coronavirus-pandemic-launches

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 11

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

origination stage"); *see also, Seville Indus.,* 2025 U.S. App. LEXIS 17465, at *8 (the Fifth Circuit

recognized that "[t]he PPP's rapid implementation and reliance on self-certification in the early

days of the pandemic made it a target for fraud" and that SBA utilized its inherent audit and

investigation powers to determine eligibility at the forgiveness stage).

The First IFR "established the use of the PPP Application form." *Springfield Hosp., Inc.*

*v. Guzman,* 28 F.4th 403, 411 (2d Cir. 2022). "Acting in accordance with Section 1102 of the

CARES Act, the [SBA] created a PPP Borrower Application that required applicants to certify that

(i) they stood eligible for a PPP loan under governing SBA rules; (ii) they would use loan proceeds

only for business-related purposes; (iii) economic uncertainty made the PPP loan necessary to

support applicants' ongoing operations; and (iv) all information in the application was true and

correct." *United States ex rel. Bloomfield v. Engineered Structures, Inc.*, 755 F. Supp. 3d 950, 953-

54 (E.D. Va. 2024).[8]

At the time the PPP program started, the Section 7(a) loan application form, SBA

Form 1919, contained the following certification:

> **Executive Order 12549, Debarment and Suspension (2 CFR 180, adopted by
> reference in 2 CFR Part 2700 (SBA Debarment Regulations))** -- By submission
> of this loan application, you certify and acknowledge that neither you nor any
> Principals have within the past three years been: (a) debarred, suspended, declared
> ineligible from participating in, or voluntarily excluded from participation in a
> transaction by any Federal department or agency; (b) formally proposed for
> debarment, with a final determination still pending; (c) indicted, convicted, or had
> a civil judgment rendered against you for any of the offenses listed in the
> Regulations; or (d) delinquent on any amounts due and owing to the U.S.
> Government or its agencies or instrumentalities as of the date of execution of this
> certification.

---

[8] Forms have always been integral to the Section 7(a) loan process. SBA's regulations make the requirements in forms "Loan Program Requirements" which SBA Section 7(a) lenders must follow, or risk SBA declining to purchase their guaranties. *See* 13 C.F.R. § 120.10 (as it existed in April 2020) ("Loan Program Requirements" are "requirements imposed upon Lenders . . . by . . . Official SBA notices and *forms* . . . as such requirements are issued and revised by SBA from time to time" (italics added)); 13 C.F.R. § 120.524(a) (as of April 2020) ("SBA is released from liability on a loan guarantee (in whole or in part, within SBA's exclusive discretion), if any of the events below occur: (1) The Lender has failed to comply materially with any Loan Program Requirement for 7(a) loans").

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 12

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

> If you are unable to certify and acknowledge (a) through (d), you must obtain and attach a written statement of exception from SBA permitting participation in this loan. You further certify that you have not and will not knowingly enter into any agreement in connection with the goods and/or services purchased with the proceeds of this loan with any individual or entity that has been debarred, suspended, declared ineligible from participating in, or voluntarily excluded from participation in a Transaction. All capitalized terms have the meanings set forth in 2 C.F.R. Part 180.

Declaration of Martin F. Andrews ("Andrews Decl."), Ex. 1, *SBA Form 1919* (as current at the time of the inception of PPP). This was a clearly pre-existing "term [or] condition" of the Section 7(a) program that Congress gave SBA the discretion to apply. *See Pharaohs GC, Inc. v. United States SBA,* 990 F.3d 217, 226 (2d Cir. 2021) ("Congress gave the SBA Administrator discretion to exclude certain types of businesses from the program"; "the CARES Act unambiguously gives the Administrator discretion to adopt the longstanding 'terms, conditions, and processes' of the 7(a) program"); *Gateway Radiology,* 983 F.3d at 1256-61 (finding that Congress delegated to SBA the question of whether bankruptcy debtors were eligible for PPP loans). Congress is presumed to have known what those pre-existing "terms, conditions or processes" were, and approved of them. *Id.* at 1256 ("[W]e presume that Congress is aware of existing law when it passes legislation"); *Pharaohs*, 990 F.3d at 227 ("We presume that Congress legislates against the backdrop of existing law").

If an applicant was unable to make this certification in connection with a 7(a) application, however, additional documentation and extra analysis was required.  Given the nature of the Covid-19 emergency, SBA realized that it would be impossible to conduct additional analysis of these borrowers. Andrews Decl., ¶¶ 21-22. This was true of several categories of borrowers. *Id.* at ¶¶ 6-8. There was a congressional imperative to get the loans out the door immediately. In the statute, the word "may" preceded the "guarantee covered loans under the same terms, conditions, and processes" verbiage. 15 U.S.C. § 636(a)(36)(B). The word *"may"* is discretionary. *Gateway*

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 13

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

*Radiology,* 983 F.3d at 1257 ("The use of the permissive word 'may' vests the SBA with discretionary authority"). As numerous courts have found, this verbiage, combined with SBA's emergency rule making authority and its "extraordinarily broad powers" under the Small Business Act, gave SBA the discretion to alter pre-existing Section 7(a) loan requirements where necessary. *See, e.g., id.* at 1257 (finding these authorities grant SBA such discretion); *Tidewater Fin. Co. v. United States SBA,* 2025 U.S. Dist. LEXIS 44294, at *14 (E.D. Va. Mar. 11, 2025) (under appeal) (SBA had discretion whether to apply exclusions to first draw PPP loans); *Accordius Health at Asheville, LLC v. United States SBA,* 2025 U.S. Dist. LEXIS 101463, at *14-*15 (W.D.N.C. Apr. 8, 2025) (under appeal) ("the CARES Act grants the SBA discretion, but does not require it, to guarantee PPP loans meeting the Act's criteria"). Andrews Decl., ¶¶ 20-22. Therefore, SBA made a general policy decision that categories of applicants that required extra analysis would need to be covered by bright-line rules. *Gateway Radiology,* 983 F.3d at 1263 ("That [SBA] fashioned its consideration of bankruptcy status into a streamlined and bright-line rule that would speed up decisions about whether PPP loans should be made is not implausible, irrational, or the product of arbitrary and capricious decision making"). SBA exercised its discretion to adopt the following certification in the SBA Form 2483 PPP Loan Borrower Application Form:

> **Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700) –** By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

Ex. E, *SBA Form 2483*; Andrews Decl., ¶¶ 2, 20-22. This was clearly a reasonable decision on SBA's part, and many courts have agreed when analyzing analogous restrictions.

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 14

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    The three-year rule is valid. When Congress drafted the CARES Act, it engrafted the new

2    program into the 7(a) Program, stating that SBA "*may* guarantee covered loans under the same

3    terms, conditions, and processes" as Section 7(a). 15 U.S.C. § 636(a)(36)(B)) (emphasis added).

4    The Act further gave SBA "[e]mergency rulemaking authority" to "issue regulations" to carry out

5    the PPP, dispensed with the APA notice requirements, and gave SBA a 15-day deadline to adopt

6    regulations. 15 U.S.C. § 9012. This must be viewed against SBA's pre-existing authority under

7    the Small Business Act; Congress included amongst the Agency's broad powers the authority to

8    "establish general policies" for the "granting and denial" of financial assistance; to "make such

9    rules and regulations as [it] deems necessary to carry out the authority vested in [it]" and to "take

10   any and all actions … [it] determines . . . are necessary or desirable in making, servicing,

11   compromising, modifying, liquidating, or otherwise dealing with or realizing on loans." 15 U.S.C.

12   §§ 633(d), 634(b)(6), (7). The Small Business Act further gives SBA the authority to "make such

13   investigations as [SBA] deems necessary to determine whether a recipient of or participant in any

14   assistance under this chapter or any other person has engaged or is about to engage in any acts or

15   practices which constitute or will constitute a violation of any provision of this chapter, or of any

16   rule or regulation under this chapter, or of any order issued under this chapter." 15 U.S.C.

17   § 634(b)(11). The Supreme Court has characterized SBA as having "extraordinarily broad powers"

18   to pursue the Small Business Act's goals. *SBA v. McClellan*, 364 U.S. 446, 447 (1960).

19   Plaintiff argues that SBA was required to follow notice and comment procedures.

20   Congress's own command *in the CARES Act itself* dictated that SBA did not have to do so.

21   15 U.S.C. § 9012. Further, SBA found "good cause" to dispense with notice and comment

22   rulemaking. *See, e.g., First PPP IFR* at 20,811 (finding "good cause" due to the emergency

23   situation and also citing the statutory exemption from APA notice and comment requirements).

24   Courts have sustained this. *See, e.g. Gateway Radiology,* 983 F.3d at 1263 ("Congress did away

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 15

1   with the notice and comment period"); *Accordius Health,* 2025 U.S. Dist. LEXIS 101463, at *6

2   ("Congress instructed SBA to issue rules" with 15 days and to do so "without regard to APA

3   notice-and-comment procedures")

4          The three-year rule is not contrary to existing law. Plaintiff argues that the three-year rule

5   is contrary to government-wide suspension and debarment procedures. The three-year rule,

6   however, does not suspend or debar anyone. Under the suspension and debarment regulations,

7   suspensions and debarments bind the entire government. *See* 2 C.F.R. § 180.5 ("This part provides

8   guidance for Federal agencies on how to implement the *government-wide debarment and*

9   *suspension system* for nonprocurement programs and activities" (italics added)). By contrast, the

10  three-year rule in the certification does not cover the entire government – indeed *it doesn't even*

11  *cover the entire Section 7(a) program, only the PPP portion of it.* Under the certification in the

12  SBA Form 1919, Twinco would still have been eligible to apply for a 7(a) loan as soon as its

13  suspension had ended; it would simply have had to provide extra documentation, and the lender

14  and SBA would have to conduct additional analysis of the application. As explained above,

15  Congress gave SBA broad discretion to modify ordinary Section 7(a) requirements in the specific

16  emergency context of the PPP program to further the goals of that program. PPP Lenders could

17  not go through additional processes or analyses for individual borrowers and issue the loans as

18  expeditiously as necessary under the PPP program. Thus, SBA adopted a limited bright line rule

19  solely for PPP purposes. There is nothing in the CARES Act that conflicts with this particular

20  restriction.

21         Plaintiff argues that "the SBA has never offered any reason as to why it adopted the Three

22  Year Rule for PPP loans, yet does not appear to have adopted the same rule for any of its other

23  loan programs." *Appellant's Brief*, Dkt. 20 at p. 20. Given the forgoing explanation, it is enough

24  to say that this was a pre-existing Section 7(a) requirement adapted for PPP purposes.

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 16

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    Plaintiff argues that the rule was never properly explained, but this was one of a number of

2    similar categories of applicants that required additional documentation and analysis under

3    Section 7(a), and which SBA decided simply couldn't be analyzed within the constraints of the

4    PPP program. SBA has explained that reasoning numerous times in the past, as evidenced in the

5    many cases sustaining SBA's decision to adopt bright line exclusions in analogous contexts. *See,*

6    *e.g., Gateway* (bankruptcy exclusion); *Pharaohs* (prurient interests exclusion); *Tidewater*

7    (exclusion of financial businesses primarily engaged in lending); *Anjac Fashion Bldgs., LLC v.*

8    *United States SBA,* 2024 U.S. Dist. LEXIS 136790 (C.D. Cal. Jul. 15, 2024) (passive entity

9    exclusion). The Andrews Decl. makes plain that these exact same considerations were in play here.

10    *See Andrews Decl.,* ¶¶ 20-22. In this context, the rationale is self-explanatory.

11    Plaintiff extensively criticizes the SBA Form 2483 itself, but these criticisms are red

12    herrings. The SBA Form 1919 had a separate question, Question 3, asking whether "the Small

13    Business Applicant [is] presently suspended, debarred, proposed for debarment, declared

14    ineligible, or voluntarily excluded from participation in this transaction by any Federal department

15    or agency" to which a yes or no answer needed to be given. Ex. 1, *SBA Form 1919*. Similarly, in

16    the portion of the SBA Form 1919 dealing with principals, a separate question, Question 20, asked

17    "[a]re you presently suspended, debarred, proposed for debarment, declared ineligible, or

18    voluntarily excluded from participation in this transaction by any Federal department or agency"

19    to which a yes or no answer also needed to be given. *Id.* This was in addition to the certification at

20    the end of the SBA Form 1919 discussed above. *Id.* The SBA Form 2483 simply mirrored this.

21    *Compare* Ex. 1 (*SBA Form 1919*), *with* Ex. E (*SBA Form 2483*). This was an emergency program,

22    after all, and SBA did not need to reinvent the wheel when Congress, presumably aware of the

23    requirements in SBA Form 1919, elected to allow SBA to guarantee PPP loans under the "same

24    terms, conditions and processes" as other Section 7(a) loans. Further, even if, hypothetically, the

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 17

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  two certifications were duplicative, Plaintiff cannot realistically point to any harm that could result

2  from that.

3      The fact is that the certification containing the three-year rule says unambiguously that, by

4  submitting the application, the applicant has certified that neither it nor any of its owners has been

5  suspended or debarred within the previous three years. Ex. E, *SBA Form 2483*. It is obvious that if

6  an applicant cannot so certify, the applicant cannot submit the form, and is thus ineligible.

7  Contrary to Plaintiff's arguments, there are no differences in the applicability and enforceability

8  of the numerous certifications in these forms set up in exactly this manner, and Plaintiff cannot

9  point to any reason why there should be.  The certification in the SBA Form 2483 was adapted

10 from the certification on page 7 of the SBA Form 1919; page 2 of the SBA Form 2483 lists several

11 certifications right at the top that do not require initialing. *See* Exs. 1, E.  This includes the

12 certification that the applicant has "read the statements included in this form, including the

13 Statements Required by Law and Executive Order, and I understand them" – the certification that

14 required Plaintiff to have read and understood the certification containing the three year rule; SBA

15 Form 1919 has similar certifications on the bottom half of pages 3 and 5. *See* Exs. E, 1.

16     Ultimately, the SBA Form 2483 is a simple, unitary four-page form. It is very short.

17 Millions of PPP loan applicants were able to navigate this form with ease. The form makes it

18 absolutely unambiguous that applicants who had been suspended or debarred within the last three

19 years or which had owners who were suspended or debarred within the last three years were

20 ineligible for PPP loans. Plaintiff has never actually contended that it did not receive, read, and

21 clearly understand this certification. Congress gave SBA the discretion to adopt requirements from

22 the Section 7(a) loan program into the PPP and modify them for the purposes of the PPP program.

23 SBA did so here and adopted a brightline rule for the same reasons it did so in other similar

24

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 18

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  circumstances. SBA's discretion was reasonably exercised and there is nothing arbitrary and

2  capricious about it.

3  **SBA's Application of the Three Year Rule in this Case Was Reasonable**

4      This is primarily a facial challenge. Plaintiff does not dispute that it and its principal were

5  suspended within three years of applying for the loan and that it was therefore ineligible under the

6  certification. It passes over in silence the fact that the application containing the certification was

7  a contractual document to which it was bound. It further does not contest the fact that it certified

8  that "the information provided in this application and the information provided in all supporting

9  documents and forms is true and accurate in all material respects" under penalty of law. *Twinco's*

10  *SBA Form 2483*, CAR SBA_000059.

11      Moreover, as artfully as Plaintiff may try to obscure it, Plaintiff has never contended that

12  it did not have a copy of the third and fourth pages of the application, and that it had not read and

13  understood it. Appellant's Brief states "***the administrative record indicates*** the application

14  consisted of the first two pages of SBA Form 2483" and more notably "[t]he administrative record

15  also reflects that ***the SBA*** is unaware of whether Twinco ever received or read pages 3 and 4 that

16  follow the application in SBA Form 2483." Dkt. 20 at p. 12 (emphasis added). It is posited that if

17  Twinco and its principals had not received or read those pages, Twinco would have come out and

18  said so. This is tantamount to an admission that they received and read those pages.

19      Plaintiff continuously mischaracterizes this form by trying to draw a distinction between

20  the first two and last two pages.  The fact is that it was an integrated unitary four-page form. *See*

21  Ex. E, *SBA Form 2483*.  At the top of the second page, the form includes the following certification:

22  "I certify that . . . I have read the statements included in this form, including the Statements

23  Required by Law and Executive Orders, and I understand them." *Id.* at p. 2. Those statements of

24  law and executive orders were on pages 3 and 4, and the certification in question was one of them.

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 19

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

*Id.* at p. 4 (the certification is entitled "Debarment and Suspension *Executive Order* 12549 (2 CFR Part 180 and Part 2700)." (italics added)). Plaintiff tries to assert that these pages were the instructions, but the instructions are only the portion at the top of page 3. *Id.* at p. 3. Plaintiff's assertion just adds support for the Plaintiff being well aware of the requirements, because Plaintiff could not have known how to fill out the form without the instructions. Try as Plaintiff might to parse the form, it was a short and simple four-page form. Every PPP borrower was expected to understand and comply with the entire form, and millions did.

Plaintiff complains that SBA did not apply the three-year rule until the forgiveness stage, but this is perfectly consistent with how the PPP program worked. As explained above, under the congressional imperative to get the money out the door as quickly as possible, underwriting requirements were dramatically streamlined. Lenders were permitted to rely in good faith on borrower self-certifications and the loan documents would not be sent to SBA, but were rather maintained by lenders. SBA could not, therefore, make eligibility determinations at the loan origination stage. It was only at the loan forgiveness stage that SBA could do so. Under the Small Business Act, SBA has extensive pre-existing authority to conduct audits and investigations and take any actions that might be necessary or desirable to ensure that recipients of Section 7(a) assistance follow program rules and regulations. It was with this background, and in attempting to protect the integrity of the PPP, that SBA adopted its system of PPP loan review. *SBA, Business Loan Program Temp. Changes; Paycheck Protection Program – SBA Loan Review Procedures and Related Borrower and Lender Responsibilities,* 85 Fed. Reg. 33,010 (June 1, 2020).

In *Bruckner Truck Sales, Inc. v. Guzman,* 2023 U.S. Dist. LEXIS 220729 (N.D. Tex. Dec. 12, 2023) *aff'd on reconsideration in* 2024 U.S. Dist. LEXIS 41647 (N.D. Tex. Feb. 27, 2024) (presently on appeal to the Fifth Circuit), the PPP borrower in question tried to argue in an APA case that "SBA entirely lacked authority to consider – at the loan forgiveness stage – its eligibility

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 20

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    for the loan." *Id.* at \*3. In a tightly reasoned opinion well grounded in the text of the CARES Act

2    and the Small Business Act, the *Bruckner* court rejected this argument.

3            There, as here, the plaintiff asserted there was a difference between the loan eligibility

4    phase and forgiveness phase, as well as in the use of the term "eligible recipient" between

5    15 U.S.C. § 636(a)(36)(A)(iv) ("'eligible recipient' means an individual or entity that is eligible to

6    receive a covered loan") and 15 U.S.C. § 636m(a)(10) ("'eligible recipient' means the recipient of

7    a covered loan."). *Bruckner,* 2023 U.S. Dist. LEXIS 220729, at \*6-10; *Appellant's Brief*, Dkt. 20

8    at pp. 22-23 (*see also* discussion in *Appellant's Brief* at pp. 7-10). The *Bruckner* court pointed out

9    that the plaintiffs had neglected to discuss another statutory term, the term "covered loan" which

10   "means a loan guarantied under paragraph (36) of section 7(a) of the Small Business Act

11   (15 U.S.C. § 636(a)) as added by section 1102" of the CARES Act. *Bruckner* at \*7-10; CARES

12   Act § 1106(a)(1) (as codified, at 15 U.S.C. § 636m(a)(1), the provision simply defines "covered

13   loan" as "a loan guaranteed under section 636(a)(36) of this title").   Examining the statute as a

14   whole, the court found the key to the question was in the words "guaranteed under." *Bruckner* at

15   \*7-\*10. Referring to the determination in *Pereira v. Sessions,* 585 U.S. 198, 128 S. Ct. 2105, 201

16   L. Ed. 2d 433 (2018), which found that the word "under" was the "glue that bonds" two different

17   statutory provisions together, *Pereira* at 2117, the *Bruckner* court determined:

18           So too here. For purposes of loan forgiveness, "the word 'under' provides the glue"
             that "connects" the loan forgiveness requirements in CARES Act Section 1106 with
19           the loan origination provisions in CARES Act Section 1102 (15 U.S.C. § 636(a)).
             Accordingly, if a PPP loan is granted to an ineligible borrower, that loan is not
20           "guaranteed under" 15 U.S.C. § 636(a) because an ineligible borrower's loan is not
             "in accordance with" or "according to" the governing statutes and the SBA's
21           authoritative regulations interpreting those statutes. *Id.* (*quoting Pereira*, 138 S. Ct.
             at 2117). And that is true regardless of whether the ineligibility stems from a
22           violation of a statutory eligibility requirement (e.g., an applicant business
             employing more than 500 employees, see 15 U.S.C. § 636(a)(36)(D)) or a
23           regulatory one.

24

DEFENDANTS' RESPONSIVE BRIEF AND                          **UNITED STATES ATTORNEY**
MOTION FOR SUMMARY JUDGMENT                               700 Stewart Street, Suite 5220
[3:24-cv-05061-BHS] - 21                                  Seattle, Washington 98101-1271
                                                          206-553-7970

1  *Bruckner,* 2023 U.S. Dist. LEXIS 220729, at *9 (internal docket reference omitted). The court

2  notably emphasized that the "[p]laintiff's position would preclude the SBA from denying

3  forgiveness *even* to borrowers who obtained their loans via intentional misrepresentations and

4  omissions, so long as those borrowers fulfilled the other statutory requirements" and "[t]his

5  interpretation runs contrary to the statutory text and the logic that supports it." *Id.* at *9-10

6  (emphasis by the court).

7        The *Bruckner* court also noted that "[p]laintiff's position is incompatible with the fact that

8  Congress located the PPP in Section 7(a) – *within* the SBA's pre-existing loan authority – thereby

9  making the SBA responsible for investigating, reviewing, maintaining, and creating rules

10  protecting the program's integrity." *Id.* at *10.

11        In the instant case Plaintiff tries to argue that SBA had no authority to override the

12  forgiveness judgments delegated to private lenders; Plaintiff further tries to rely for support on

13  Congress's statutory amendment adopting a simplified loan process for loans up to $150,000

14  where SBA's audit rights are abbreviated. Dkt. 20 at pp. 7-10, 21-23. The *Bruckner* court rejected

15  all of these contentions. The court examined the statutory provision and the arguments, and found

16  the plaintiff's argument that only lenders rather than SBA employees have the delegated power to

17  make or forgive loans to be untenable. *Bruckner,* 2023 U.S. Dist. LEXIS 220729, at *14-*17. The

18  court explained that, though the plaintiff filed an application with a lender rather than SBA, and

19  that lender had issued the loan, the plaintiff had not identified any authority to the effect that, just

20  because a lender issued a loan based on a borrower's self-certification, SBA was divested of review

21  authority. *Id.* at *15. This would have been incompatible with SBA's Section 634(b)(11) audit and

22  investigation authority, and plaintiff had shown no indication that the PPP overrode this authority.

23  *Id.* The court further explained that the plaintiff's argument clashed with the "general proposition

24  that, where government agencies are concerned, the head of an administrative agency has the

power to review and revise acts of subordinates where," as here, "the powers in question are vested in the subordinate under the supervision and direction of the superior or the power to administer is vested in the superior." *Id.* at *16 (quotes omitted). The Court continued:

> The mere fact that the CARES Act delegated loan origination decisions to private lenders does not suggest the SBA lacks authority to review those decisions. On the contrary, the head of an agency retains the authority to make final decisions for the agency even if he or she delegates the authority to make these decisions to his or her subordinates. And at no point here did Congress or the SBA confer "sole decisional authority" on private lenders. To hold otherwise would create havoc in the administration of our laws.

*Id.* at *15-17 (citations, quotes and parentheticals omitted). As to Congress's subsequent adoption of a simplified forgiveness process with reduced SBA auditing for loans under $150,000, the court found that this subsequent legislation bolstered SBA's case. *Id.* at *11-13. The court found that since it left intact SBA's audit authority for loans of $150,000 or greater, it represented "Congress's affirmative decision to ratify the SBA's conclusion that it had statutory authority to assess borrower eligibility at the loan forgiveness stage." *Id.* at *12. Finally, the *Bruckner* court found that SBA's June 1, 2020 IFR concerning loan reviews was an interpretive rule that simply explained SBA's pre-existing authority. *Id.* at *17-*22. The court noted that "prevent[ing] . . . unanticipated revenue loss" was a "valid legislative purpose" and found that "[t]he Loan Review IFR sought to prevent the 'unanticipated revenue loss' of forgiving ineligible borrowers' improperly issued PPP loans", a rationale that was "neither illegitimate nor arbitrary." *Id.* at *22.

      In regard to SBA's authority to review a lender's forgiveness decision, another decision from the Central District of California has recently come down agreeing with *Bruckner* that SBA has independent authority to review loans at the forgiveness stage. *Anderson v. JPMorgan Chase Bank, N.A.*, 2025 U.S. Dist. LEXIS 136709, *11-13 (C.D. Cal. Jul. 17, 2025).

      Plaintiff is unable to point to any case law that counters these determinations. To the extent it makes any other arguments on these grounds, it is simply attempting to substitute its own policy

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 23

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

preferences for the agency's. When it comes to the application of the three-year rule, and SBA's

eligibility review at the forgiveness stage, Plaintiff was treated like any other PPP borrower, and

its arguments avail it nothing.  SBA's process was reasonable.

### Conclusion

Plaintiff does not dispute it violated the three-year rule. The rule itself was simply an

adaptation of an existing Section 7(a) loan requirement to the PPP context, for the same reasons

as SBA has applied in analogous contexts. Congress clearly gave SBA the discretion to apply this

requirement to the PPP program and to adapt it to the urgent circumstances of that program.

Plaintiff was suspended within three years of the date of its PPP loan application and falsely

certified that it had not been. Thus, this Honorable Court should sustain SBA's decision to deny

forgiveness to this ineligible borrower.


DATED this 3rd day of August, 2025.


Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney


*s/ Kristin B. Johnson*
KRISTIN B. JOHNSON, WSBA #28189
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone No. (206) 553-7970
Fax No. (206) 553-4073
Email: kristin.b.johnson@usdoj.gov

Attorneys for Defendants

I certify that this memorandum contains 8,269 words,
in compliance with the Local Civil Rules.

DEFENDANTS' RESPONSIVE BRIEF AND
MOTION FOR SUMMARY JUDGMENT
[3:24-cv-05061-BHS] - 24

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970